Exhibit A



## LEASE SUMMARY

Date Lease Typed: 12/14/2018

Lessor: WRI PM as Agent for US BANK Trust NA, LSF9 Master Participation Trust

Tenant 1: Barbara Simone

Tenant 2: Henry Simone

Tenant 3: N/A

Tenant 4: N/A

Other Occupants: Alexia Escobar

Premises: 22 PISCITELLO DR, Branford, CT 06405

Rent: $1968

Effective Date: 04/01/2019

Expiration Date: 04/30/2020

Security Deposit: 1875

Pet Fee: $N/A

Admin Fee: 50.00

Lessor Agent's Address: 3525 Piedmont Road NE Bldg. 7 Ste 700 Atlanta, GA 30305

Prorated Rent Amount: N/A

For The Month Of: N/A

Concession/Credit #1: N/A

For The Month(s) Of: N/A

Concession/Credit #2: N/A

For The Month(s) Of: N/A

Total Concession/Credit: N/A

To change all information population fields at once:
Press "Ctrl" + "A" and right click anywhere in the document, then click on "Update Field". A prompt should come up allowing you to change the document field population information.
Right click on shaded area on this page and click "Update Field", then, after the edits have been made in the prompt box, go to each shaded portion in the document below, right click on the shaded portion and click "Update Field" (it is much easier to use the "Ctrl" + "A" method)

## LEASE AGREEMENT
## Connecticut

This Lease Agreement ("Lease") is made and entered into on [12/14/2018] ("Effective Date") by and between [WRI PM as Agent for US BANK Trust NA, LSF9 Master Participation Trust
] ("Lessor") and [Barbara Simone], [Henry Simone], [N/A], [N/A] (collectively, whether one or more, whether masculine or feminine, "Tenant"). If more than one tenant, each tenant shall be jointly and severally liable for the obligations of Tenant hereunder. Subject to the terms and conditions set forth in this Lease, Lessor rents to Tenant, and Tenant rents from Lessor, the premises located at [22 PISCITELLO DR, Branford, CT 06405 ] ("Premises"). The Premises shall be occupied only by the above mentioned Tenant and the following occupants: [Alexia Escobar]. For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lessor and undersigned Tenant do hereby agree as follows:

1. **AGENT FOR LESSOR:** WRI Property Management, LLC ("Agent") is authorized to manage the Premises and is authorized to act in all respects for Lessor hereunder including to receive service of process and give and receive notices and demands at the address for Lessor's Agent set forth on the signature page hereof. Agent is authorized to enforce any term of this Lease. Any reference to Lessor under this Lease shall be deemed to include a reference to Agent.

2. **DEMISE AND CONSIDERATION:** In exchange for valuable consideration including, without limitation, the promise by Tenant to pay to Lessor the rental payments set forth herein, and the performance by Tenant of all of the other terms, conditions and covenants contained in this Lease, Lessor agrees to lease to Tenant and Tenant agrees to lease from Lessor the Premises. All of the terms and conditions of this Lease are consideration for performance hereunder and are not mere recitals.

3. **INITIAL TERM:** [04/01/2019] to midnight [04/30/2020] (the "Term").

4. **NOTICES:** All notices hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Lease becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.

A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

5. **RENT:** Rent is $[1968] per month. If the Effective Date or the expiration date of this Lease is on the second day through the last day of any month, the rent shall be prorated for that month. Mailing the rent payment shall not constitute payment. Rent must be actually received by Lessor to be considered paid. Tenant acknowledges that all funds received will be applied to the oldest outstanding balance owed to Lessor including, but not limited to, additional rent resulting from late payments of rent, fees associated with checks returned for insufficient funds, administrative fees, costs and fees associated with a dispossessory action and any other monies then due and payable by Tenant hereunder.

6. **LATE PAYMENT:** Rent is due each month on or before the 1st of the month. Rent received after 5:00 P.M on the 10th day of the month will incur a late charge of $100.00 which shall be due and payable to Lessor as additional rent. Personal checks will not be accepted after the 10th day of the month. Late payments must be made by certified check or money order form only and will not be accepted unless all such additional rent charges are included. Tenant shall pay to

1

Lessor a service charge of $35.00 due and payable as additional rent for any instrument Tenant presents to Lessor which is dishonored and if dishonored such rent will not be considered paid and will be late and the $100.00 late charge shall be due and payable as additional rent. Any returned checks must be redeemed in 48 hours by cashier's check or money order and will not be accepted unless all charges (including additional rent) are included. After one returned check, all rent thereafter must be paid by cashier's check or money order and no returned checks will be redeposited. Payments shall be applied first to accrued late charges, then other charges due (including additional rent), and then rent. Partial payments will not be accepted. No two party checks will be accepted. This Lease is subject to an increased rent after the initial term as more fully set forth in Section 7 below. NON-PAYMENT OF RENT WHEN DUE IS A WILLFUL VIOLATION OF THIS LEASE.

TENANT MAY NOT WITHHOLD PAYMENT OF RENT TO LESSOR WHILE IN POSSESSION OF THE PREMISES IN ORDER TO ENFORCE ANY OF TENANT'S RIGHTS UNDER APPLICABLE LAW.

**7.     RENEWAL TERM**: Either party may terminate this Lease at the end of the term by giving the other party a sixty (60) day written notice prior to the end of the term. If neither party gives written notice of termination, this Lease will automatically be extended on a month-to-month basis, and in addition to rent, Tenant will be required to pay 10% of the monthly rent due and payable as additional rent, unless Tenant agrees to a renewal lease, in which Tenant is subject to an additional term of 365 days with a possible rental increase. All of the other terms of this Lease shall remain the same. The additional term shall begin on the first day following the end of the preceding term.

**8.     KEYS**: Lessor agrees to deliver to Tenant keys and other entry devices, including any garage door opener(s) if available, for the Premises. Tenant and Lessor acknowledge the actual type and quantities of keys shall be listed on the Move-In/Move-Out Documents which will be incorporated as part of this Lease upon completion of the Move-In/Move-out Documents.

Example of keys that may be provided:
   Doors
   Pool
   Garage Door Opener(s)
   Mailbox
   Other

Tenant shall return all keys and other entry devices provided by Lessor when Tenant vacates the Premises. Should Tenant fail to return said entry devices, Lessor may charge $100.00 per lost or stolen pool access card and $100.00 per lost or stolen gate access card. An additional charge of $25.00 for each lost or stolen door key and $25.00 for each lost or stolen mailbox key will be assessed. Unreturned garage door opener(s) will incur a charge of $50.00 per opener.

**9.     RENTER'S INSURANCE:** To the extent permitted by law, Lessor will not be responsible for any loss to personal property due to fire, theft, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruptions of utilities or any other damages due to an act of nature or otherwise. Tenant agrees to maintain at Tenant's sole cost and expense a standard type of Renter's Insurance issued by a licensed insurance company of Tenant's choice which shall have a minimum of $100,000.00 in liability insurance. Lessor shall be named as an additional insured on any such policy as follows: [Barbara Simone, Henry Simone, N/A, N/A] and WRI Property Management, LLC. Prior to move in, Tenant shall provide evidence that such insurance is in full force by furnishing Lessor with a certificate of insurance listing Lessor as a certificate holder. In the event Tenant becomes uninsured for any liabilities specified, such shall be considered a default and material breach under this Lease.

**10.    UTILITIES**: Tenant acknowledges that all utilities and/or services are to be paid for by Tenant with the exception of any utilities and/or services that may be provided by any applicable homeowner's association as part of the monthly homeowner's association assessments paid by Lessor.

Tenant must connect or transfer utilities not provided by Lessor into the name of Tenant within one (1) business day of the Effective Date. If Tenant does not timely comply with the requirements of the preceding sentence, Lessor may, in addition to any other remedies provided for hereunder, without notice to Tenant, assess a $100.00 utility fee per utility due and payable as additional rent plus utility usage and disconnect utility services. Lessor may, at Lessor's option, pay utilities and be reimbursed by Tenant as a utility expense. Said utilities include, but are not limited to, water, sewer, electric, sanitation, gas, telephone, cable, internet and other utilities.

11. **TENANT RESPONSIBILITIES**: Tenant agrees to insure that the Premises is maintained so that the same is returned to Lessor at the expiration of this Lease in substantially the same condition as the Premises exists on the Effective Date, ordinary wear and tear excepted. In addition, Tenant agrees to make maintenance checks at proper intervals on smoke alarms located in the Premises and to report any and all defects in writing to Lessor immediately. In the event that hot water, heating, air conditioning, plumbing or other equipment shall need repair, and Tenant does not notify Lessor in writing of the needed repair or, for any reason that is beyond the control of Lessor, any such utilities require reduction or cut off, Lessor shall not be liable for any damage arising as a result thereof. Tenant shall maintain the Premises, including the fixtures therein, in a clean and safe condition. Tenant agrees to abide by all municipal and state laws and ordinances so as not to create a nuisance and not to conduct or initiate activities which would increase the rate of insurance on the Premises. In addition to, and not in lieu of the foregoing responsibilities, Tenant hereby acknowledges and agrees to the following responsibilities:

(a) Tenant shall (i) keep, and pay the costs associated with, the lawn mowed and edged, the landscaping beds free of weeds, the shrubs trimmed and the trash and grass clippings picked up on a regular basis and (ii) keep, and pay the costs associated with, the Premises being maintained in a clean and safe manner, including yard, lot, grounds, walkways and driveway, clean and free of rubbish, trash and debris.

(b) Tenant shall provide, and pay the costs associated with, monthly and other proper pest control, including, but not limited to, rodent, ants, cockroaches, spiders and other insects.

(c) In freezing conditions in which the outside temperature may drop below 32 degrees Fahrenheit, Tenant shall turn the thermostat regulating the heat serving the Premises in an "on" position and set the same to a minimum of 60 degrees Fahrenheit. Tenant also agrees, in such case, to leave the faucets dripping.

(d) Tenant shall notify Lessor of any dangerous condition or need for maintenance existing in the Premises. Maintenance expenses paid for directly by Tenant are not subject for reimbursement by Lessor. Tenant agrees to maintain the Premises in a neat, sanitary and clean condition, free of trash and debris and shall regularly change the air conditioning filters on a monthly basis.

12. **SECURITY DEPOSIT**: To secure Tenant's performance, Tenant shall deposit with Lessor on the Effective Date the sum of $[1875] and such deposit shall be held in an accordance with Connecticut law. Said deposit, with interest, will be refunded to Tenant as required by applicable law or within thirty (30) days of Tenant vacating the Premises, whichever shall occur earlier.

13. **DEDUCTIONS FROM SECURITY DEPOSIT**: Lessor shall have the right to deduct from the deposit any damages suffered by Lessor as a result of Tenant's failure to comply with Tenant's obligations under this Lease. Lessor shall return the balance of the deposit in accordance with Section 12 above, together with a written statement itemizing the nature and amount of such damages. Lessor's application of the security deposit shall not prevent Lessor from claiming damages in excess of the deposit. It is hereby expressly understood that no part of the deposit is to be construed as a prepayment of rent by Tenant and may not be used to pay rent during any month during the term hereof, including, without limitation, the last month of such term.

14. **EARLY TERMINATION BY LESSOR**: Lessor may terminate the Lease prior to the expiration of the Lease term. Lessor shall have the right to terminate the Lease early upon not less than 60 days' notice and upon such termination Tenant shall vacate the Premises. In the event that Lessor terminates the Lease prior to the end of the Lease term and Tenant is not in default under the Lease, Lessor shall credit Tenant with the sum of $1,000.00 ("Early Termination Fee") which shall first be applied against any monies owing from Tenant to Lessor with the balance thereafter being paid to Tenant by Lessor. In such event Tenant agrees to vacate the Premises subject to the following:

(e) Lessor shall give Tenant written notice of the early termination and to vacate (in which case Tenant shall still owe rent through the notice period); and

(f) After Tenant has vacated the Premises, Lessor shall credit to Tenant the Early Termination Fee to Tenant as liquidated damages for disturbing Tenant's quiet enjoyment of the Premises and for the inconvenience of moving early.



This credit will be applied to Tenant's account at the time the Tenant vacates the Premises and shall be included with any applicable security deposit refund. The foregoing shall not relieve the Tenant of his or her responsibilities and obligations regarding any damage to the property.

15. **EARLY TERMINATION BY TENANT**: Tenant shall have the right to terminate this Lease early only if (i) Tenant is not in default hereunder at the time of giving notice; (ii) Tenant has strictly complied with all of the provisions of this section; (iii) Tenant continues to pay rent on time and in-full for the months prior to the termination date; (iv) Tenant pays any additional fees due per this section on time and (v) termination is as of the last day of a calendar month. If all of these conditions have been met, Tenant may terminate this Lease by following the procedures set forth below and returning the Premises in a clean and rent ready condition, ordinary wear and tear excepted.

(g) Procedures. To be effective, any notice for early termination must be signed by all Tenants. Tenant's election of early termination shall not relieve Tenant of responsibilities and obligations regarding damage to Premises and/or Property. Tenant shall: (i) Give Lessor no less than thirty (30) days prior notice of the termination; (ii) Comply in ALL respects with the requirements set out in this Section; (iii) Pay one hundred percent (100%) of the total rent that otherwise would have been owed through the termination date; (iv) forfeit the security deposit unless otherwise prohibited by law and (v) Pay an Early Lease Termination Administrative Fee equal to one month's rent, not later than thirty (30) days from the date of Notice to Terminate is received.

(h) Military Activation. Notwithstanding any provision to the contrary contained herein, if Tenant is called to active duty in the military during the term of this Lease, Tenant shall present to Lessor the official orders activating Tenant, then and in that event, this Lease shall be controlled by the Servicemembers' Civil Relief Act of 2003, as amended (codified at 50 U.S.C.A. §§ 3901-4043).

(i) Active Military. If Tenant, or an immediate family member of Tenant occupying the Premises, is on active duty with the United States military and Tenant or such immediate family member of Tenant receives, during the term of this Lease, permanent change of station orders or temporary duty orders for a period in excess of three (3) months, then Tenant's obligation for rent hereunder shall not exceed the sum of: (1) 100% of the total rent and any applicable late fees accrued through the date on which Tenant gives notice, (2) thirty (30) days' rent after Tenant give notice under this section, and (3) the cost of repairing damage to Premises or Property cause by an act or omission of Tenant. If Tenant is active duty military and presents to Lessor a copy of official orders of transfer to another military location, then and in that event, Tenant shall be required to give Lessor the notice to terminate early as set forth elsewhere herein but shall have no obligation to pay an Early Lease Termination Administrative Fee or additional rent other than for thirty (30) days after Tenant gives notice under this section.

16. **ACCESS BY LESSOR**:

(a) Right of Entry. Lessor, Agent and their employees shall have the right to enter the Premises at any time in the event of an emergency without Tenant's consent. Lessor shall give reasonable advance notice to Tenant of Lessor or Lessor's agents, servants or contractor's request to enter the Premises at any reasonable time, to make necessary or agreed to repairs, alterations or improvements, supply necessary or agreed to services or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contracts. Tenant shall not unreasonably withhold consent to Lessor's request for entry.

(b) Advertising. Lessor may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Premises during the term of the Lease. Lessor may take interior and exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Premises.

(c) Trip Charges. If Lessor has made prior arrangements with Tenant to access the Premises and is denied or is not able to access the Premises because of Tenant's failure to make the Premises accessible, Lessor may charge Tenant a trip charge of $85.00.

(d) Keybox. A keybox is a locked container placed on the Premises holding a key to the Premises. The keybox is opened by a special combination, key or programed access device so that persons with the combination, key or access



device may enter the Premises, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury.)

(1) Tenant authorizes Lessor, Agent or Lessor's broker to place on the Premises a keybox containing a key to the Premises (i) during the last 30 days of the Lease term, and (ii) at any time Lessor lists the Premises for sale with a licensed broker.

(2) If Lessor or Agent has notified Tenant of its intent to access the Premises to show it to prospective buyers or tenants and is denied or is not able to access the Premises because of Tenant's failure to make the Premises accessible, Lessor may charge Tenant a trip charge of $85.00.

(3) Lessor, Agent, and Lessor's broker are not responsible to Tenant, Tenant's quests, family or occupants for any damages, injuries or losses arising from the use of the keybox unless caused by Lessor, Agent or Lessor's broker.

17.     **POSSESSION:** If Lessor is unable to deliver possession of the dwelling unit to Tenant, the parties will terminate this Lease without monetary obligation on the part of either party in connection with such termination. Following such termination, the parties may enter into a new lease with respect to the Premises or another property.

18.     **DEFAULT, ABANDONMENT AND OPTIONS IN EVENT OF BREACH:** In the event that Tenant fails to pay any one or more installment of rent or any other amount owing or accruing hereunder as and when due, or if Tenant uses or permits the Premises to be used for any other purpose than that for which the Premises are hereby let, or if Tenant vacates before the expiration of the term hereunder without the written consent of Lessor or its Agent, or if Tenant violates any of the other terms, conditions or covenants contained herein, or if Tenant otherwise abandons the Premises, and upon the happening of any one or more of said events, Tenant shall be in default hereunder and Lessor or its Agent may, at their option, give notice as required by applicable law in the state where the Premises are located to seek possession of the Premises and terminate this Lease.  Lessor's failure to take advantage of any default on the part of Tenant shall not be construed as a waiver thereof, nor shall any custom or practice become established between the parties having the effect of a waiver of any condition or term required by this Lease. Termination pursuant to this Section does not release Tenant from any obligation or liability for future rentals. Lessor is entitled to re-lease the Premises to another tenant for a fair rental and will make efforts to do so, but such effort will not take precedence over Lessor's entitlement to lease other vacant properties first. Tenant will remain liable for all rent incurred until the Premises is re-leased on Tenant's behalf (subject to the next sentence) or the termination of the original Lease term, whichever comes first. If the Premises are re-leased, Tenant shall remain liable for the difference between the rental remaining due under this Lease and the amount Lessor is able to recover by making a good faith effort at reletting the Premises on Tenant's behalf. In the event that Tenant is in default hereunder as set forth herein, in addition to, and not in limitation of, the foregoing, Lessor shall be entitled to exercise all remedies available at law or in equity. Whenever under the terms hereof Lessor is entitled to possession of the Premises, Tenant will at once surrender same to Lessor in as good condition as at the Effective Date, normal wear and tear excepted.

Tenant shall give notice to Lessor of any extended absence in excess of fourteen (14) days no later than the fifth (5th) day of the absence. In the event that Tenant is absent from the Premises for a period greater than fourteen (14) days, Lessor may enter the Premises with twenty-four (24) hours' notice at reasonable times for inspection or maintenance purposes. In the event of an unexplained absence of Tenant from the Premises for a period of fifteen (15) days or more, the Premises shall be deemed abandoned.

Subject to the foregoing, Tenant agrees that Tenant shall be responsible to Lessor for the rent accruing under this Lease even if Tenant fails to occupy or otherwise abandons the Premises or otherwise defaults hereunder. Tenant further acknowledges that in the event that Tenant does not occupy the Premises or otherwise abandons the Premises or otherwise defaults hereunder Tenant consents to the application of the deposit by Lessor to cover Lessor's costs in preparing the Premises for rental and re-renting the Premises, together with any and all unpaid rent and any related late fees and penalties accruing from the Effective Date.

In the event that the Lease is terminated as a result of Tenant's default hereunder and Tenant was entitled to any rent concession under the Lease, in addition to Lessor's other remedies as set forth herein, Tenant must repay to Lessor the total rent concession upon such termination.



6

19. **ALTERATIONS TO BUILDING OR PREMISES**: Tenant hereby agrees not to make any alterations to the building located on the Premises or to the Premises or on or about the Premises connected therewith nor to paint upon, or attach any signs, wires or other structure or apparatus on or to the Premises without the prior written consent of Lessor or Lessor's Agent.

20. **CONDITION OF PREMISES/NO REPRESENTATIONS**: Tenant (a) has examined the Premises, (b) is satisfied with the physical condition thereof, (c) agrees that taking possession thereof is conclusive evidence of receipt of the Premises in a fit and habitable condition, and (d) agrees that no representation as to condition has been made. Tenant agrees that no promise to decorate, alter or improve the Premises has been made, except such as may be contained in this Lease, if any. Any written agreement to decorate, alter or improve the Premises to the extent unperformed shall not carry forward and shall not be made a part of any extension or renewal of this Lease. Tenant hereby acknowledges and agrees that at no time during the course of discussions and/or negotiations leading up to and including the time of execution of this Lease did any representative, agent or employee of Tenant or Agent make any representation(s), engage in any discussion(s) of the Lease, or otherwise communicate with Tenant, anything that in any way whatsoever contradicts any written term and/or condition of this Lease, nor did Lessor, any representative, agent and/or employee of Lessor or Agent make any statement(s) or communication(s) or representation(s) of any nature whatsoever that supplement or in any way whatsoever amend or add any terms or provisions to this Lease as written. **Tenant hereby acknowledges that Tenant has read this Lease in its entirety and is fully informed of all contents hereof.**

21. **DAMAGES TO PREMISES**: Tenant shall be responsible for, and pay the expenses associated with, replacing all glass broken and any keys lost or broken and the expenses for repairs of any condition caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Tenant shall notify Lessor's Agent immediately upon the occurrence of any event causing Tenant to be required to perform as set forth in the immediately preceding sentence. If Tenant does not remedy the condition requiring it to perform hereunder within seven (7) days of the occurrence thereof (as determined by Lessor), Lessor shall be entitled, but not obligated, to perform the same on Tenant's behalf and, as a result thereof, Tenant shall be liable for all reasonable costs incurred in connection therewith and shall pay to Lessor such costs immediately upon demand therefor.

Tenant shall commit no waste of or on the Premises nor allow the same to occur, and Tenant shall take good care of the same. Tenant is and shall be responsible and liable for any injury and damage done to the Premises by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, reasonable wear and tear excepted.

Tenant shall on the expiration of this Lease surrender to Lessor the quiet and peaceable possession of the Premises in like good order as at the Effective Date, reasonable wear and tear excepted, and shall not remove any item which has been affixed to the Premises so as to damage or injure the Premises and shall be liable for any and all damages caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Other than as required to be performed by Tenant hereunder, Lessor shall make all repairs to the Premises so that the Premises are kept in a habitable condition unless the reason for such repairs is as a result of the act or inaction of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests.

22. **FIRE, CASUALTY OR CONDEMNATION**: In the event of damage or destruction to the Premises by fire, water or other hazard, or in the event of malfunction of equipment or utilities, Tenant shall immediately notify Lessor. If the damages are such that occupancy of the Premises as a whole can be continued, Lessor shall make repairs as needed (to the extent Lessor receives adequate insurance proceeds) with reasonable promptness and rent shall not abate during the period of such repairs. If only part of the Premises is rendered unusable by the damage or destruction, Tenant may vacate only that portion of the Premises rendered unusable and Tenant's rent shall be reduced by the fair market value of the unusable portion of the Premises during the period of partial vacancy, provided, that the damage or destruction was not caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, but in all other respects the terms and provisions hereof shall continue in full force and effect. In any event, if the damages resulted from the wrongful or negligent acts of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, Lessor may pursue all of its remedies against Tenant provided under applicable law. If, in Lessor's reasonable opinion, the Premises are so damaged or destroyed other than by the wrongful or negligent acts of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests so as to substantially impair Tenant's enjoyment of the Premises, this Lease may be terminated by either Lessor or Tenant in which event Tenant shall vacate the Premises within seven (7) days of receiving notice by Lessor or giving notice to Lessor. In the event that the Premises are damaged or destroyed so as to substantially impair Tenant's enjoyment of the Premises due to the wrongful or negligent acts of Tenant and/or anyone in

7

Tenant's household and/or their respective invitees, licensees and guests, Lessor may, in addition to Lessor's other remedies under applicable law, terminate this Lease by providing Tenant with a seven (7) day notice to vacate, in which event Tenant shall vacate the Premises within seven (7) days of receipt of the notice.

If the whole or any part of the Premises shall be taken by Federal, State, County, City or other authority for public use or under any statute, or by right of eminent domain, or by condemnation, then, when possession shall be taken thereunder of the Premises, or any part thereof, the term hereby granted and all rights of Tenant hereunder shall immediately cease and terminate, and Tenant shall not be entitled to any part of any award that may be made for such taking, nor to any damages thereof except that the rent shall be adjusted as of the date of such termination of this Lease.

23.　**PERSONAL PROPERTY**: If Tenant leaves any personal property in the Premises after the termination of this Lease, Lessor shall remove the personal property and store it for 30 days. Tenant has the right to reclaim such items from Lessor during the 30-day period. If Tenant does not reclaim such property after 30 days, Lessor may dispose of it as it deems appropriate at Tenant's expense.

24.　**USE AND DISCLOSURE OF OCCUPANTS**: The Premises shall be used for residential purposes only and shall be occupied only by the person(s) named on this Lease. Tenant hereby agrees that the Premises are to be occupied only by those persons specifically identified within this Lease or in the Application (as defined hereinafter). If any other person resides with Tenant or within the Premises for more than ten (10) days in any thirty (30) day period, without prior written authorization from Lessor, Lessor has the right to declare this Lease in default. Failure of Tenant to comply with this provision is considered a material noncompliance with and default under this Lease and Lessor may deliver written notice to terminate this Lease according to Section 14 hereof.

25.　**HOLDOVER CLAUSE**: If either Lessor or Tenant sends a notice of non-renewal hereunder as permitted hereby or this Lease otherwise terminates as set forth herein and Tenant remains or continues to be in possession of the Premises or any part thereof after the expiration or termination of this Lease without the consent of Lessor, said holdover shall be considered willful and not in good faith, and Lessor, in addition to any other remedies set forth herein, shall be entitled to recover an amount equal to three (3) months' rent or actual damages, whichever is greater, and any other charges allowed by applicable law in the state where the Premises are located until the Premises are delivered to Lessor as required hereby.

26.　**NON-REFUNDABLE ADMINISTRATION FEE**: Tenant hereby tenders a non-refundable "Administration Fee" to Lessor in the amount of fifty ($50.00). This Administration Fee cannot be used to defray Tenant's obligation for damages and costs Lessor incurs for any damages to the Premises.

27.　**ENTIRE AGREEMENT**: This Lease, and any applicable rules referenced herein or applicable to the Premises, along with all Addenda attached hereto, and the Application, set forth all of the covenants, promises, conditions and understandings between Lessor and Tenant concerning the Premises and there are no other covenants, promises, conditions and/or understandings, either oral or written, between Lessor and Tenant. No modification, limitation or extension of this Lease shall be valid unless executed in writing and signed by all parties hereto. This Lease may be executed by the parties in separate counterparts, each of which when executed and delivered shall be an original for all purposes, but all of which, when taken together, shall constitute one and the same instrument. For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Lease with original signatures if requested to do so by the Lessor's mortgage lender or the other party.

28.　**SEVERABILITY**: The provisions of this Lease are completely severable and if one provision or more shall be found to be unconscionable or unenforceable for any reason whatsoever, such finding shall not be effective to void any other provision, all of which shall remain in full force and effect to the extent allowed under applicable law.

29.　**INDEMNITY**: Tenant agrees to defend, indemnify and save harmless Lessor from any and all liability, loss, claim, demand, cost, expense and/or damage (including, without limitation, costs and expenses of attorneys through all appeals of counsel of Lessor's choosing) arising from any nuisance made or suffered on the Premises by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests or from any carelessness, neglect or improper conduct of any such persons or breach of any of Tenant's obligations hereunder. All personal property and any part of the Premises within the control of Tenant shall be at the sole risk of Tenant. To the extent permitted by law, Lessor shall not be liable for damages to or loss of property of any kind which might be lost, stolen, damaged or destroyed by fire,

water, steam, defective refrigeration, elevator or otherwise while on the Premises or for any personal injury unless caused by the gross negligence of Lessor. In addition, Tenant shall reimburse Lessor promptly for the cost to Lessor for property damage to the Premises and any applicable common areas, including, without limitation, the cost of repairs or service (including plumbing trouble) caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Tenant shall be responsible for any such damage resulting from windows or doors left open. Payment of all amounts due Lessor under this provision or this Lease is due and payable within five (5) days of delivery of written notice to Tenant. All amounts due hereunder are deemed additional rent.

30. **ATTORNEYS' FEES**: If Tenant is in default under this Lease and Lessor refers the matter to an attorney to evict Tenant, Tenant shall reimburse Lessor for reasonable attorney's fees. If Lessor refers this matter to an attorney because Tenant has not paid amounts owed to the Lessor when due, Tenant shall reimburse Lessor for attorney's fees not in excess of fifteen percent (15%) of the amount of the judgment obtained against Tenant. Tenant shall also reimburse Lessor for all other collection costs and expenses.

31. **SPRINKLER SYSTEM**. The Premises [does/does not] contain a fire sprinkler system. If there is a fire sprinkler system in the Premises, the last dated that the system was inspected or maintained was [_____].

32. **TENANT'S APPLICATION**: Tenant's application (the "Application") for this Lease is made a part of this Lease. Tenant hereby states that the information given by Tenant in the Application is true, complete and correct. As part of the Application, Tenant certified and warranted to Lessor that Tenant was not a convicted sex offender and Tenant hereby again warrants and certifies that Tenant and no members of Tenant's household is a convicted sex offender. Tenant understands that Lessor relies on such representation to comply with applicable laws. If any information contained in the Application is false, then, in consideration of Lessor's reliance upon the Application, any false representation shall be considered a material breach of this Lease and Lessor may deliver written notice to terminate this Lease pursuant hereto. Tenant shall notify Lessor of any change in the information given in the Application.

33. **POOL**: If there is a swimming pool, spa and or hot tub ("Pool") on the Premises, Tenant agrees as follows:

(j) Tenant will use the Pool at Tenant's own risk. Tenant will be responsible for the proper use of the Pool, including, but is not limited to, keeping the Pool clean of debris and keeping the Pool area clean, neat and organized. Tenant must operate the Pool in accordance with the manufacturer's instructions and in a safe, responsible manner. Tenant is responsible for keeping any and all gates locked and Pool area secured at all times. No pets of any kind are permitted in the Pool at any time. Tenant agrees to refrain from attempting to make any repairs or adjustments to Pool equipment or to any electrical wiring for Pool equipment. Tenant must immediately notify Lessor of any repair that the swimming pool/hot tub may require. Tenant is responsible for the full cost that may be due for repair and/or replacement of the Pool that is required as a result of negligence by Tenant or Tenant's occupants or guests.

(k) No children under 18 years of age shall swim or sit in the Pool without continuous adult supervision.

(l) Tenant understands that Lessor has contracted with a third party vendor to service the Pool during the Term of this Lease. Tenant agrees to allow Lessor and its vendors access at regular times to maintain the Pool and Pool equipment. Tenant shall be responsible for all costs and fees paid to such third-party vendor in connection with the servicing or maintenance of the Pool. In the event that Lessor pays any such costs and fees, Tenant shall reimburse Lessor for such payment no later than the date on which the next month's rent payment becomes due and payable.

(m) Tenant understands that the Pool is strictly an amenity and that the use of this amenity is not guaranteed under the terms of the Lease. Any interruption or non-availability of the use of the Pool will not violate any terms of the Lease.

(n) Lessor will not be held responsible for any injuries sustained by Tenant or Tenant's occupants or guests when using the Pool, and Tenant will indemnify Lessor for any actions resulting from injuries to Tenant or Tenant's occupants or guests.

9



(o) A violation of any rule regarding the Pool or use thereof by Tenant will be considered a material default under this Lease. In such an event, Lessor may initiate legal proceedings to evict or have Tenant removed from the Premises, as well as seek judgment against Tenant for any monies owed to Lessor as a result of Tenant's default.

34. **MORTGAGEE'S RIGHTS**: Tenant's rights under this Lease shall, at all times, be automatically subordinate and junior to any existing or future mortgage, deed of trust or other lien applicable to the Premises. If requested, Tenant shall execute promptly any document that Lessor may reasonably request to verify this subordination agreement.

35. **SECURITY POLICY**: Lessor shall not provide, nor does Lessor have any duty to provide for Tenant, security services for the protection of Tenant or Tenant's property. Tenant hereby acknowledges that Tenant understands the foregoing, and Tenant shall look solely to the law enforcement agencies of the county or municipality in which the Premises is located for Tenant's protection. It is agreed and understood that Lessor shall not be liable to Tenant for any damages, injuries or wrongs sustained by others, or property of same from criminal or wrongful acts of third parties, that may cause harm to Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests resulting from a negligent, criminal or wrongful act by same. Tenant acknowledges that neither Lessor nor Agent has made any representations, written or oral, concerning the safety of the community or the effectiveness or operability of any security devices or security measures. Tenant acknowledges that neither Lessor nor Agent warrants or guarantees the safety or security of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests against the criminal or wrongful acts of third parties. Each Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests is responsible for protecting his or her own person and property. Tenant acknowledges that security devices or measures may fail or be thwarted by criminals or by electrical or mechanical malfunction. Therefore, Tenant acknowledges that Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests should not rely on such devices or measures and should protect themselves and their property as if these devices and measures did not exist.

36. **NON-WAIVER**: Failure of Lessor to insist upon strict, timely compliance by Tenant with any of the terms and conditions of this Lease shall not amount to nor be construed as nor otherwise constitute a waiver by Lessor of Lessor's right thereafter to insist upon strict and timely compliance by Tenant of any and all terms and conditions of this Lease, including, without limitation, any of the terms and conditions that may not have been enforced strictly by Lessor previously. Acceptance by Lessor of rent after knowledge of any breach of this Lease by Tenant shall not be a waiver of Lessor's right nor construed as an election by Lessor not to enforce the provisions of this Lease pursuant to such a breach. Lessor's failure or delay in demanding damage reimbursement, late payment charges, returned check charges or other sums due Lessor shall not be a waiver of Lessor's right to insist on payment thereof. Lessor may demand same at any time, including without limitation at the time of Tenant's vacating the Premises or thereafter.

37. **LAW GOVERNING**: This Lease shall be construed by and enforced with, and the validity and performance hereof shall be governed by, the laws of the state in which the Premises are located.

38. **CONSTRUCTION**: This Lease shall not be construed more strongly against any party hereto regardless of who was responsible for its preparation.

39. **NO CRIMINAL ACTIVITY**: Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests shall not engage in or facilitate criminal activity on or near the Premises, including, but not limited to, violent activity or drug-related criminal activity. Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests shall not permit the Premises to be used for, or facilitate, criminal activity, including, but not limited to, violent criminal activity or drug related criminal activity.

40. **COMPLIANCE WITH LAWS AND APPLICABLE RULES AND REGULATIONS, ETC./PARTICULAR PROVISIONS RELATING TO HOMEOWNER'S ASSOCIATIONS**: Tenant and anyone in Tenant's household and their respective invitees, licensees and guests shall comply with and abide by all applicable federal, state and local laws, rules, regulations and ordinances affecting in any way the Premises and the rules and regulations now or hereafter promulgated by Lessor and any association in which the Premises may be subject and any covenants, conditions and restrictions and other instruments recorded in the applicable public records. Tenant agrees not to engage in any activity in or about the Premises and the community in which the Premises are located, including any common areas, of an illegal nature, purpose or intent. Tenant further agrees that Tenant and anyone in Tenant's household and their respective invitees,



licensees and guests shall not be loud, boisterous or disorderly, nor shall they individually or collectively in any way whatsoever disturb the rights, comforts and conveniences of other residents of the community in which the Premises are located. Tenant shall be responsible for the conduct of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Lessor and Lessor's Agent reserve the right, as allowed by applicable law, to amend and/or add rules, regulations and policies which Agent deems necessary to effectively manage the Premises.

In the event that the Premises are part of a homeowner's association community, Tenant is subject to all of the documents, rules and regulations applicable thereto, including, without limitation, the declaration recorded in the official records of the county in which the Premises is located and the rules and regulations of such homeowner's association. Tenant agrees to comply with and be bound by all of such documentation and any other rules, regulations and obligations imposed by such homeowner's association. If applicable, the monthly assessments arising from such homeowner's association shall be paid directly by Lessor and are included in the rent. Tenant shall provide prompt written notice to Lessor's Agent if Tenant receives any notice of violation of any of the documents, rules and/or regulations of such homeowner's association. Tenant acknowledges and agrees that (a) all rights and obligations of such homeowner's association are derived from, and to the extent provided in, the applicable homeowner's association documents, rules and/or regulations and not from anything contained in this Lease, express or implied and (b) Tenant shall have no voting rights in such homeowner's association. Tenant shall directly pay to such homeowner's association all fees incurred as a result of Tenant's and/or anyone in Tenant's household and/or their respective invitees, licensees and guests violation or failure to comply with any of the applicable homeowner's association documents, rules and/or regulations and/or other instruments of record and shall notify Lessor within three (3) days of Tenant's receipt of any notice of such violation. Tenant specifically authorizes Lessor to charge Tenant for all unpaid fees incurred as a result of Tenant's and/or anyone in Tenant's household and/or their respective invitees, licensees and guests violation of or failure to comply with any of the applicable homeowner's association documents, rules and/or regulations and/or other instruments of record as additional rent.

41. **SUB-LETTING/ASSIGNMENT**: Tenant will not sublet or assign the Lease without the prior written consent of Lessor which may be granted or withheld in Lessor's sole and absolute discretion. In the event that Lessor allows subletting or an assignment of this Lease (which it has no obligation to do), Tenant shall nevertheless remain liable to Lessor for all of the terms, conditions and covenants of this Lease, including, but not limited to, the payment of rent.

42. **WATERBEDS**: No waterbeds may be filled without proof of Tenant's liability insurance listing Lessor and Agent as loss payee and written permission of Lessor's Agent.

43. **WAIVER OF JURY TRIAL**: Lessor and Tenant hereby waive their right to demand a jury trial in any cause of action arising between Lessor and Tenant concerning this Lease or in any way relating hereto.

44. **ADDENDA**: The following Addenda are attached hereto and made a part of this Lease as if fully set forth herein. In the case of any conflict between the provisions of the Addenda attached hereto and made a part hereof and any provisions of this Lease, the provisions of such Addenda shall govern and should any term or provision of such Addenda be ruled invalid or unenforceable by a court of competent jurisdiction, the remainder of such Addenda shall remain in full force and effect.

- Lead Disclosure Addendum
- Smoke Detector Addendum
- Pet Addendum
- Mold Addendum
- HOA Rules and Regulations Addendum

[SIGNATURE PAGE FOLLOWS]

11



IN WITNESS WHEREOF, THE PARTIES HAVE HEREUNTO EXECUTED THIS LEASE AS OF THE EFFECTIVE DATE FIRST SET FORTH ABOVE:

x _____*James Goodman*_____ Agent for Lessor
James Goodman
CT - REB.0791625 - WRI-CT
or Authorized Signer on my Behalf:

WRI Property Management, LLC
3630 Peachtree Rd. NE, Suite 1500
Atlanta, GA 30326
404.467.4045 – Office
www.wripm.com
GA Firm License: 64683

Tenant will receive a copy of the Lease via e-mail at the time that all parties to the Lease have executed the Lease. The date on which such email shall be sent is the latest date indicated beside a Tenant's signature below. Tenant acknowledges that a copy of the Lease delivered via electronic mail shall be deemed an original and shall satisfy any delivery requirements under state law.

Printed name: _____
x _____ Tenant   12/15/2018 _____ Date Signed

Printed name: _____
x _____*Henry Simone*_____ Tenant   12/26/2018 _____ Date Signed

Printed name: _____
x _____ Tenant   _____ Date Signed

Printed name: _____
x _____ Tenant   _____ Date Signed



All parties agree that the property was ☐ or was not☒ built prior to 1978

## LEAD DISCLOSURE ADDENDUM

<u>Disclosure of Information on Lead-Based Paint Hazards</u>

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure.** _____JG_____
**Initials of Lessor or Authorized Agent**

☐(a) Presence of lead-based paint or lead-based paint hazards (check one below):
Known lead-based paint and/or lead-based paint hazards are present in the housing.

☒(b) Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
☐(c) Records and reports available to the lessor (check one below):
Lessor has provided Tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

☒(d) Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Tenant's Acknowledgment.** 
**Initials of Tenant**

(a) Buyer/Tenant has received copies of all information, if any, listed above.
(b) Buyer/Tenant has read and understands the above lead warning statement and has received the pamphlet "Protect Your Family from Lead in Your Home".
(c) Buyer/Tenant has [check one below]:
☐Received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
☐Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment.** _____JG_____
**Initials of Lessor or Authorized Agent**

(a) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4582 and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the Lead Disclosure Addendum and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.



| | |
|---|---|
| DocuSigned by: *Barbara Simone* <br> Tenant: Barbara Simone | 12/15/2018 <br> Date Signed |
| DocuSigned by: *Henry Simone* <br> Tenant: Henry Simone | 12/26/2018 <br> Date Signed |
| Tenant: N/A | Date Signed |
| Tenant: N/A | Date Signed |
| DocuSigned by: *James Goodman* <br> WRI Property Management, LLC, <br> as Agent for Lessor: | 12/27/2018 <br> Date Signed |



## SMOKE DETECTOR ADDENDUM

In accordance with the laws and ordinances of the state in which the Premises are located, this Smoke Detector Addendum is prepared to give Tenant instructions as to the care of a smoke detector and additional safety information. For Tenant's safety, Tenant should take good care of the smoke detector(s) in the Premises by replacing batteries and/or maintaining power to the smoke detector(s). Tenant is responsible for any damage done to the smoke detector(s). If the smoke detector(s) is defective, Tenant should notify Agent of such defects in writing.

**BATTERY OPERATED DETECTOR**

IF THE SMOKE DETECTOR(S) IS BATTERY OPERATED please follow the instructions below:

(p) The alarm horn and the indicator light on the smoke detector lets you know whether the smoke detector is working.

(q) When the indicator light, which you can see though the clear push button of the test switch, flashes once a minute, the smoke detector is operating normally. Some models have a white push button and do not flash.

(r) When the alarm is sounding, the smoke detector has sensed smoke or combustion particles in the air. The alarm will automatically turn off when the smoke in the air is completely gone.

(s) If the alarm horn beeps once a minute, the smoke detector's battery is weak and needs to be replaced immediately.

**To keep your detector in good working order, you should:**

(a) Test the smoke detector regularly (weekly is recommended) by pressing the test switch for up to 10 seconds until the alarm sounds.

(b) Replace the battery once a year or immediately when the low battery "beep" signal sounds once per minute.

(c) Vacuum the dust off the smoke detector sensing chamber at least once a year. This can be done when you open the smoke detector to replace the battery. Remove the battery before cleaning. Use a soft brush attachment and carefully remove any dust on the smoke detector components especially on the openings of the sensing chamber. Replace the battery after cleaning.

(d) Clean the smoke detector's cover when it becomes dirty. First open the cover and remove the battery, then hand wash the cover with a cloth dampened with mild soapy water, rinse it with a cloth dampened with clear water and dry it with a lint-free cloth. Be careful not to get any water on the smoke detector components. Replace the battery and close the cover.

(e) Test the smoke detector after closing the cover whenever you have opened it to replace the battery or clean it.

**NOTE:** If the smoke detector does not work properly, make sure the battery is fresh and is connected correctly and that the sensing chamber is clear. **IF THERE IS STILL A PROBLEM, NOTIFY AGENT IN WRITING IMMEDIATELY.**

**ELECTRIC DETECTOR**

IF THE SMOKE DETECTOR(S) IS POWER OPERATED please follow the instructions below:

(a) The alarm horn and the indicator light on the smoke detector lets you know whether your detector is working right.

(b) When the indicator light, which you can see through the clear push button of the test switch, glows continuously, the smoke detector is receiving power and operating normally.



(c) When the alarm is sounding, the smoke detector has sensed smoke or combustion particles in the air. The alarm will automatically turn off when the smoke in the air is completely gone.

<u>To keep your detector in good working order, you should:</u>

(d) Test the smoke detector regularly (weekly is recommended) by pressing the test switch for up to 10 seconds until the alarm sounds.

(e) DISCONNECT THE POWER BEFORE FOLLOWING THE CLEANING INSTRUCTIONS BELOW:

1. Vacuum the dust off the openings in the smoke detector cover with a soft brush attachment at least once a year.

2. Clean the smoke detector's cover when it becomes dirty. Hand wash the cover with a cloth dampened with mild soapy water, rinse it with a cloth dampened with clear water and dry it with a lint-free cloth. Be careful not to get any water inside the cover on the detectors components.

3. Test the smoke detector after restoring power whenever you have turned off the power to clean it.
   **NOTE**: If the smoke detector does not work properly, make sure the power is on and that the inside of the smoke detector and the openings to the sensing chamber are clear. **IF THERE IS STILL A PROBLEM, NOTIFY AGENT IN WRITING IMMEDIATELY.**

| Tenant: Barbara Simone *(signed)* | 12/15/2018 |
| --- | --- |
| | Date Signed |
| Tenant: Henry Simone *(signed)* | 12/26/2018 |
| | Date Signed |
| Tenant: N/A | Date Signed |
| Tenant: N/A *(DocuSigned: James Goodman)* | 12/27/2018 |
| WRI Property Management, LLC, as Agent for Lessor: | Date Signed |



## PET ADDENDUM

1.	In any event that Tenant fails to disclose any and all pet information, Lessor may assess a non-refundable pet fee in the amount of $ N/A .

2.	Lessor and Tenant agree to a three (3) pet maximum with the following conditions:

3.	Tenant agrees to pay the following non-refundable pet fee: N/A . Payment of this fee in no way compromises the right of Lessor to charge extra for costs and expenses incurred by pet(s) for damages.

4.	Only the pet(s) listed and described below are authorized under this Pet Addendum. Additional or other pets must be approved by Lessor.

5.	Pet(s) will not cause danger, damage, nuisance, noise or health hazard or soil the Premises or its grounds or any applicable common areas, walks, parking areas, landscaping or gardens. Tenant agrees to clean up after the pet and agrees to accept full responsibility and liability for any damage, injury or action arising from or caused by the pet.

6.	Tenant agrees to register and immunize the pet(s) in accordance with local laws and requirements.

7.	Tenant warrants that the pet(s) is housebroken. Tenant warrants that the pet has no history of causing physical harm to persons or property, such as biting, scratching and chewing and further warrants the pet has no vicious history or tendencies.

8.	The following list of aggressive breeds are not permitted: American Pit-bull Terrier, Doberman Pinscher, Chow Chow, Rottweiler, Bullmastiff, German Shepherd, Presa Canario, Malamute, and Akita.

9.	Livestock is not permitted on or in the Premises. Livestock includes, but is not limited to, chickens, cows, goats, pigs and roosters.

10.	Exotic creatures are not permitted on or in the Premises. Exotic creatures include, but are not limited to, snakes, spiders, lizards and mice.

11.	Dogs and cats must be controlled at all times and must be kept on a short leash while in any applicable common areas or on the grounds. Barking will not be tolerated and is considered a nuisance to other occupants of the community in which the Premises are located. Tenant shall clean up pet defecations from the grounds. Proper disposal of cat litter (securely bagged) will be done on a frequent basis. Odors arising from cat litter will not be tolerated.

12.	Aquariums will not leak and will be cleaned regularly to prevent foul water and/or odor.



| PET DESCRIPTION(S): | | | | | |
|---|---|---|---|---|---|
| Type/ Breed | Kind | Name | Color | Age | Weight |
| | | | | | |
| | | | | | |
| | | | | | |

☐ Check here if this application is not applicable and there will be no pets on the Premises.

_____      12/15/2018
Tenant: Barbara Simone                Date Signed

DocuSigned by:
*Henry Simone*      12/26/2018
Tenant: Henry Simone                Date Signed


Tenant: N/A                          Date Signed


Tenant: N/A                          Date Signed

DocuSigned by:
*James Goodman*      12/27/2018
WRI Property Management, LLC,      Date Signed
as Agent for Lessor:



## MOLD ADDENDUM

In order to minimize the occurrence and growth of mold in the Premises, Tenant hereby agrees to the following:

1. Moisture Accumulation. Tenant shall (a) remove any visible moisture accumulation in or on the Premises, including on walls, windows, floors, ceilings and bathroom fixtures; (b) mop up spills and thoroughly dry affected areas as soon as possible after occurrence; (c) use exhaust fans in kitchen and bathroom(s) when necessary; and (d) keep climate and moisture in Premises at reasonable levels.

2. Property Cleanliness. Tenant shall clean and dust the Premises regularly and shall keep the Premises, particularly the kitchen and bath(s), clean.

3. Leaks. Inspect for leaks in the Premises on a regular basis. Look for discolorations or wet spots.

4. Notification of Management. Tenant shall promptly notify Lessor in writing of the presence of the following conditions:

(t) Water leak, excessive moisture or standing water inside the Premises;

(u) A water leak, excessive moisture or standing water in any community common area, if applicable.

(v) Mold growth in or on the Premises that persists after Tenant has tried several times to remove the same with household cleaning solutions such as Lysol or Pine Sol disinfectants, Tilex Mildew Remover or Clorox.

(w) A malfunction in any part of the heating, air conditioning or ventilation system in the Premises.

| Tenant: Barbara Simone | 12/15/2018 |
| --- | --- |
| | Date Signed |
| Tenant: Henry Simone | 12/26/2018 |
| | Date Signed |
| Tenant: N/A | Date Signed |
| Tenant: N/A | Date Signed |
| WRI Property Management, LLC, as Agent for Lessor: James Goodman | 12/27/2018 |
| | Date Signed |



## HOA RULES AND REGULATIONS ADDENDUM

[See attached]

